**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARC ANTWAIN X. RIVERS MUHAMMAD, SR., <br><br> Plaintiff, <br><br> v. <br><br> CLEATRICE X. DEMPSEY, ASYIA RIGSBYE, YORRII (SASKA) HARDING, LUZERNE COUNTY COURT OF COMMON PLEAS - ORPHANS' COURT DIVISION, THE SUPERIOR COURT OF PENNSYLVANIA and THE SUPREME COURT OF PENNSYLVANIA, <br><br> Defendants. | CIVIL ACTION NO. 3:11-CV-350 <br><br> (JUDGE CAPUTO) <br><br> (MAGISTRATE JUDGE SMYSER) |

**MEMORANDUM**

Presently before the Court is Magistrate Judge Smyser's Report and Recommendation ("R & R") and Plaintiff's Objections. Magistrate Judge Smyser recommended that Plaintiff's Complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Because Muhammad fails to state a claim upon which relief can be granted on all but one of his claims, Magistrate Judge Smyser's R & R to dismiss the complaint will be adopted in part and denied in part.

**I. Background**

The facts as stated in Muhammad's complaint are as follows:

Muhammad is the biological father of Naseem Johnson. On August 17, 2000, Judge Olszewski granted custody of Naseem to Muhammad and his then wife, Defendant Cleatrice Dempsey. Dempsey is not Naseem's biological mother.

On March 2, 2001, after numerous physical altercations with Dempsey, Muhammad filed for divorce from her.  After being served with the divorce complaint, Dempsey did not return to her residence with Muhammad.  Rather, she called Defendant Yorrii (Saska) Harding, a case worker with Luzerne County Children and Youth Services.  Harding then assisted Dempsey in kidnapping Naseem by sending a cab to Dempsey's house and advising her on "what to do and how to do it."  Muhammad notified the police that Dempsey had kidnapped his son, but the police advised him they could not act because of the court order granting custody to Dempsey.

Dempsey was sentenced to nine-to-twelve months incarceration for simple assault (not involving Dempsey) on August 21, 2001.  During Muhammad's sentence, Judge Ciavarrella granted Muhammad's divorce from Dempsey.  From prison, Muhammad filed a petition for visitation with Naseem.  On February 1, 2002, the court ordered that Dempsey would have physical and legal custody of Naseem, denied Muhammad's request for supervised visitation during his incarceration, and ordered that Muhammad complete anger management and other treatment.

Muhammad was released from prison in February of 2003.  He then sought to have criminal charges filed against Dempsey for the kidnapping of Naseem.  After the police and FBI declined to file charges, Muhammad filed a private criminal complaint against Dempsey. The District Attorney, however, decided not to prosecute that charge.  Muhammad filed a petition for review of the District Attorney's decision; Judge Mundy denied the petition. Muhammad returned to prison in August of 2003, after being sentenced to ten-to-fifty months for terroristic threats and other charges.  The charges stemmed out of Muhammad threatening to kill Dempsey for kidnapping his son.  While in prison, he filed complaints and

appeals unsuccessfully challenging the custody orders of August 17, 2000 and February 1, 2002.  Muhammad was released from prison again in April of 2008.

On September 24, 2008, Muhammad filed a petition for modification of custody/visitation.  A hearing was held on May 11, 2009.  At the hearing, Harding falsely testified that in September of 2001, Muhammad called 911 and told the police that if they did not come and take Naseem, Muhammad would kill the boy.  Muhammad explains that although he did call the police in 2001 and ask them to take Naseem because he did not yet know that the boy was his biological son, he did not threaten Naseem's life.  Defendant Asyia Rigsbye, a friend of Dempsey, also perjured herself at the hearing by stating that Muhammad told her, "You have [sic] better not show your face in court for Cleatrice, mark my words."  Rigsbye truthfully admitted at the hearing that she did not know Muhammad well and had never seen Muhammad and Naseem together.

On June 9, 2009, Judge Brown awarded legal and physical custody of Naseem to Dempsey and granted Muhammad supervised visitation.  Muhammad appealed the order; the Superior Court of Pennsylvania affirmed the order on September 10, 2010.  On December 1, 2010, the Pennsylvania Supreme Court denied Muhammad's petition for allowance of appeal.

Muhammad filed a complaint with the Middle District of Pennsylvania on February 23, 2010. Muhammad asserts claims under 42 U.S.C. §§ 1983, 1985(2)-(3), and 1986. He alleges that the Defendants engaged in a conspiracy to deprive him of his parental rights, to deprive him of due process, and to deprive him of equal protection of the law.  Further, he argues that the Pennsylvania courts had the power to prevent the deprivations but refused to do so.  As relief, Muhammad seeks custody of his son and the prosecution of

Dempsey for kidnapping. He further seeks nominal, compensatory, and punitive damages.

Magistrate Judge Smyser reviewed the claim pursuant to 28 U.S.C. § 1915(e)(2) which provides that for proceedings in forma pauperis:

> [T]he court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal– (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Magistrate Judge Smyser filed his R & R on March 8, 2011 and Muhammad responded with objections on March 21, 2011.

## II. Standards of Review

**A.    Objections to the Magistrate Judge's Report**

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the

Court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Although the standards of pleading are more liberal for *pro se* litigants like Muhammad, "*pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim." *Ireland v. McDaniel*, No. 10-387, 2011 WL 860390, at *2 (W.D. Pa. Jan. 27, 2011) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.*

## II. Discussion

### A. Immunity & State Action Issues

Magistrate Judge Smyser's determination that Defendants Luzerne County Court of Common Pleas - Orphans' Court Division, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania (collectively, the "judicial Defendants") are immune from suit under the Eleventh Amendment of the U.S. Constitution will be adopted. The Supreme Court has interpreted the Eleventh Amendment as precluding suits by citizens against a state government. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 662-63 (1974); *see also* U.S. Const. amend. XI. The Eleventh Amendment also bars suits against state entities, including Pennsylvania state courts. *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Muhammad objects to this, arguing that Congress has the power to abrogate the Eleventh Amendment under *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). *Fitzpatrick*, however, did not apply to § 1983 and § 1985–it held that Congress had authorized suits directly against states under Title VII of the Civil Rights Act of 1964. *Id.* at 448. In fact, the Supreme Court has rejected the idea that the Eleventh Amendment does not apply to § 1983, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), and this would logically apply to § 1985 as well, because both

statutes are part of the Reconstruction Civil Rights Acts and were passed with the same congressional intent, *see Gannon v. Action*, 303 F. Supp. 1240, 1244 (D.C. Mo. 1969). Therefore, the Eleventh Amendment bars Muhammad from filing suits against the judicial Defendants and these claims will be dismissed. This means that Muhammad's § 1986 claim will be dismissed entirely, as it only relates to the judicial defendants.

Magistrate Judge Smyser's recommendation that the § 1983 claims against Defendants Dempsey and Rigsbye be dismissed because they are not state actors will be rejected. Section 1983 allows suits for damages against individuals who violate a plaintiff's constitutional rights while acting "under color of law." 42 U.S.C. § 1983. But "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State"–private citizens who conspire with a state actor are also acting under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Because Muhammad alleges that Dempsey and Rigsbye conspired with Harding, a state actor, his claims against the two private citizen Defendants will not be dismissed on this ground.

Magistrate Judge Smyser's recommendation that the Court dismiss § 1983 claims against Defendants Harding, Dempsey, and Rigsbye based on their testimony at the May 11 hearing will be adopted. A plaintiff may not assert a § 1983 claim based on alleged perjury by a witness because witnesses are immune from suit under § 1983. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). Muhammad objects on the grounds that the legislative history of § 1983 indicates that Congress intended to abrogate common law witness immunity. Although there is some support for this position, *see id.* at 348-364 (Marshall, J., dissenting), I am bound by the Supreme Court's holding, which has been settled for over thirty years. Therefore, these claims must be dismissed.

7

**B. Statute of Limitations**

Magistrate Judge Smyser's recommendation that the §§ 1983 and 1985 claims must be dismissed as untimely will be adopted in part and rejected in part. Actions brought under §§ 1983 and 1985 are governed by the state statute of limitations for tort actions. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79 (1989). Thus, in Pennsylvania, a plaintiff is subject to a two-year statute of limitations on any §§ 1983 and 1985 claims. *Id.* The limitations period runs from the date when the plaintiff knew or should have known about the alleged civil rights violation. *Id.* at 80. Here, Magistrate Judge Smyser argues that because the alleged kidnapping occurred in 2001, Muhammad's February 23, 2011 filing of the complaint is untimely. But Muhammad explains that he only learned of the alleged *conspiracy* to kidnap at the May 11, 2009 trial, where Dempsey testified about her phone conversation with Harding. Because there is no evidence that Muhammad should have known about the alleged conspiracy or Harding's involvement prior to May 11, 2009, his claims under §§ 1983 and 1985 arising out of the alleged conspiracy falls within the statute of limitations. Muhammad's § 1983 claim alleging that his rights were deprived by the kidnapping itself, however, will be dismissed as untimely.

**C. Failure to State a Claim Upon Which Relief Can Be Granted**

To state an obstruction of justice claim under § 1985(2), a plaintiff must allege "a conspiracy with the purpose of impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). The plaintiff must also allege a "class-based, invidiously discriminatory animus." *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d

Cir. 1976). To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

Magistrate Judge Smyser's recommendation that the § 1985 claims be dismissed for failure to allege a class-based animus will be adopted. Muhammad objects, explaining that the alleged conspiracy between Dempsey, Harding, and Rigsbye was motivated by animus toward him for divorcing her as well as her belief that God gave her the chance to raise Naseem.[1] Although this may be true, Muhammad still does not state a claim under § 1985 because the animus he describes is directed towards him as an individual; it is not based on his race or another any other class to which he belongs. Therefore, Muhammad's claims under § 1985 will be dismissed.

### D. Unavailability of Remedies

It should finally be noted that the Court does not have the jurisdiction to grant some of the relief sought by Muhammad. First, under the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997,

---

[1] Muhammad also argues that the judicial defendants acted out of an animus based on his Islamic faith, but there is no need to consider whether this qualifies under § 1985 because these Defendants are immune from suit.

1005-06 (1994); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923)*; D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983).  The doctrine is based on the idea that only the Supreme Court of the United States has jurisdiction to "reverse or modify" a state-court judgment.  *Rooker*, 263 U.S. at 416.  Granting custody of Naseem to Muhammad would require the Court to reverse the state-court judgment granting sole custody to Dempsey, and thus this relief is barred by the *Rooker-Feldman* doctrine.  Second, it is well established that "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  The Supreme Court has therefore reasoned that "judicial intrusion into executive discretion of such high order should be minimal." *Hartman v. Moore*, 547 U.S. 250, 263 (2006).  Because of these considerations, the Court could not grant Muhammad's request that Dempsey be prosecuted for kidnapping.

**D. Leave to Amend**

Magistrate Judge Smyser's recommendation that the claims be dismissed without leave to amend will be adopted.  The dismissal of the §§ 1983, 1985, and 1986 claims against the judicial defendants, the § 1983 claims based on witness testimony and the alleged kidnapping, and the § 1985 claim based on animus arising out of the divorce and spiritual desire to mother is not based merely on a lack of factual specificity.  *Cf. Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1995) ("[W]hen an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can.").  Rather, Muhammad has alleged all necessary facts and still cannot state a claim upon which relief can be granted, so "amendment would

not cure the deficiency," *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Because amendment would be futile, these claims will be dismissed with prejudice.

## **CONCLUSION**

For the reasons stated above, the Magistrate Judge's R&R will be adopted in part and rejected in part.  All claims will be dismissed with the exception of Muhammad's § 1983 claim against Dempsey and Harding alleging that they conspired to deprive him of his constitutional rights.

 October 13, 2011                                                    /s/ A. Richard Caputo            
Date                                                                          A. Richard Caputo
                                                                                     United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC ANTWAIN X. RIVERS MUHAMMAD, SR., | CIVIL ACTION NO. 3:11-CV-350 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | (MAGISTRATE JUDGE SMYSER) |
| CLEATRICE X. DEMPSEY, ASYIA RIGSBYE, YORRII (SASKA) HARDING, LUZERNE COUNTY COURT OF COMMON PLEAS - ORPHANS' COURT DIVISION, THE SUPERIOR COURT OF PENNSYLVANIA and THE SUPREME COURT OF PENNSYLVANIA, | |
| Defendants. | |

## ORDER

**NOW**, this  13th  day of October, 2011, after consideration of Magistrate Judge Smyser's Report and Recommendation recommending that Plaintiff's Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), as well as Plaintiff's Objections, **IT IS HEREBY ORDERED THAT** the Report and Recommendation (Doc. 5) is **ADOPTED IN PART and REJECTED IN PART** as follows:

   (1) All claims against Defendants Luzerne County Court of Common Pleas - Orphans' Court Division, the Superior Court of Pennsylvania, the Supreme Court of Pennsylvania are **DISMISSED with prejudice**.

   (2) The § 1985 claims are **DISMISSED with prejudice.**

   (3) The § 1983 claims arising out of witness testimony and alleged kidnapping of Naseem Johnson are **DISMISSED with prejudice.**

    (4) The § 1983 claim against Defendants Cleatrice Dempsey and Yorrii (Saska) Harding alleging a conspiracy to deprive Plaintiff of his rights may proceed.

    (5) The case shall be recommitted to Magistrate Judge Smyser for further proceedings.

                                           /s/ A. Richard Caputo  
                                           A. Richard Caputo  
                                           United States District Judge

Case 3:11-cv-00350-ARC -JAS   Document 10   Filed 10/14/11   Page 13 of 13